(Decided 3rd June, 1875.)

---

BROWN, LANCASTER & CO. *vs.* THE HOWARD FIRE INSURANCE COMPANY, and ROBERT FOWLER, Assignee of DENSON & QUINCY, use of ISAAC S. GEORGE, Assignee of same.

*Rights and liabilities growing out of a Forged Assignment of Certificates of stock.*

B. L. & Co. as private bankers made a loan upon certain forged assignments of certificates of stock of the H. F. Ins. Co. to the agent of the firm of D. & Q. of which the real owner of the certificates was a member, in ignorance of the forgery. These certificates were presented to the Insurance Company and cancelled, and a new certificate in lieu thereof issued in the name of and delivered to B. L. & Co. About a month afterwards the firm of D & Q. failed, and notice was given to B. L. & Co. and to the H. F. Ins. Co. that the assignments were forged. On a bill filed by the assignee in bankruptcy of D. & Q. against B. L. & Co. and the H. F. Ins. Co. to compel the former to deliver up the certificate issued to them, and the latter to issue a new certificate to the complainant, it was HELD :

1st. That B. L. & Co. must sustain the loss occasioned by the forgery, and had no right to throw it upon the Insurance Company.

2nd. That if the Insurance Company were guilty of negligence in issuing the new certificate without detecting the forgery, unless that was the occasion of the loss to B. L & Co.; it would not be sufficient to shift the loss upon it.

3rd. That negligence, to operate as an estoppel must be the proximate cause of the loss.

4th. That the Insurance Company having issued the stock upon the forged name to B. L. & Co.; who had before treated it as a genuine paper, and to that extent misled the Insurance Company, B. L. & Co., ought not to hold them accountable for the loss incurred by their own error, unless they could make it appear that they might have avoided the loss but for the negligence or oversight of the Insurance Company.

5th. That any negligence on its part would not render it answerable unless that were the proximate cause of the loss.

APPEAL from the Circuit Court of Baltimore City.

The facts of the case are stated in the opinion of the Court. The decree of the Court below, (PINKNEY, J.,) now appealed from, required the Howard Fire Insurance Company to issue and deliver to the complainant, Robert Fowler, as assignee of Denson and Quincy, new certificates in the name of Isaac M. Denson, in lieu of those which had been cancelled, and to pay to the complainant, such dividends as would be due on the original certificates, if they had not been cancelled; and also required Brown, Lancaster & Co., to deliver up to the said Insurance Company, or bring into Court to be cancelled, the certificate of stock issued to them in lieu of said Denson's certificates, and to refund to said Insurance Company, all dividends received by them from said Company since the issue of said certificates of stock to them.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ALVEY, J.

*Skipwith Wilmer* and *J. Douglas Hambleton,* for the appellants.

The appellants were guilty of no negligence, as they took the certificates in the ordinary course of their business, and from the accredited agent of the firm of which the owner of the stock was the senior partner, and there was nothing in the circumstances of the case to suggest enquiry.

Had they made enquiry, the result would not have been different. The testimony shows that Mr. Denson was absent from the city. It cannot be doubted, that an enquiry at the office of his partner, would have only confirmed their belief in the genuineness of his signature. Of whom else should they have enquired, unless it be of the Howard Fire Insurance Company, in which he had been a stockholder for many years, and who must have had numerous receipts signed by him. This enquiry was made in substance by the tender of the certificates, and the answer was given in the issuance of the new ones.

The Insurance Company was guilty of negligence. It should have known the signature of its stockholders, and with the certificates in its possession, it should not have allowed the appellants to remain for nearly a month, during which time they could have collected their debt, under the impression that they had ample security.

The stock which Brown, Lancaster & Co. held, was regular stock, and if both parties were in fault—the loss should have been allowed to remain where it had fallen, viz:—upon the Insurance Company, as Mr. Denson had a right to demand of them new certificates in case of the loss or destruction of his old ones.

Where a company allows its stock to be transferred upon a forged power of attorney, it and not the innocent purchaser for value, must bear the loss. *Ashby vs. Blackwell and the Million Bank Co., Ambler,* 503, *and* 2 *Eden,* 299. This case is referred to approvingly in *Duncan vs.*

*Lintly*, 4 *McN. & G.*, 40, and by Sir ROUNDEL PALMER, in a case reported in 6 *Jurist, N. S.*, 495, and by *Bridgman in his Chancery Digest, Angel and Ames on Corporations,* sections 583-5. To the same effect are *Davis vs. Bank of England,* 2 *Bingham*, 392; *Swan vs. North British Australasian Co.*, 7 *Hurlst. and Norman*, 603; *In re Bahia and San Francisco Railway Co.*, 3 *Q. B.*, (*L. R.*,) 584; *Horton vs. The Westminster Improvement Commissioners,* 14 *Eng. L. & Eq.*, 379; *Johnston vs. Renton,* 9 *Equity Cases,* (*L. R.*,) 188; *Taylor vs. Midland Railway,* 4 *Fisher's Digest,* 7186; *Sabin vs. Bank of Woodstock,* 21 *Vermont,* 360; *Bayard vs. Farmers' Bank,* 52 *Penna.*, 235; *Pollock vs. National Bank,* 3 *Selden,* 275; *Albert vs. Savings Bank,* 1 *Md. Ch. Dec.*, 407; *Cohen vs. Gwynn,* 4 *Md. Ch. Dec.*, 357; *Loney vs. Commercial and Savings Bank, Taney's Decisions,* 310; *Chew vs. Bank of Baltimore,* 14 *Md.*, 299; *Hodges vs. Planters Bank,* 7 *G. & J.*, 306; *National Park Bank vs. Ninth National Bank,* 46 *N. Y.*, 77; *Hoffman & Co. vs. Bank of Milwaukee,* 12 *Wall.*, 193.

It matters not that the money was paid in the present case before this stock was transferred. If this transfer had been refused by the company, the appellants would have been able to recover their money, as the firm of Denson & Quincy continued to meet their obligations for nearly a month, and the appellants had a right to this notice from the company. *Bank vs. Lanier,* 11 *Wallace,* 377.

If the company has no stock to issue to the appellants, then it is the duty to pay them the amount of their loss. *Pollock vs. National Bank,* 3 *Selden,* 275.

An estoppel can be insisted upon by Brown, Lancaster & Co., in the case at bar, notwithstanding *the loan by them was made before the signature of Denson was submitted to the Howard Fire Insurance Company. Continental N. Bank vs. N. Bank of the Commonwealth,* 50 *N. Y.*, 575; *Benjamin on Sales,* (*Perkins' Am. Ed.*, 675.)

A person acts negligently, in advancing money when he does not know whether the borrower is the actual owner of the shares. *The Queen vs. Shropshire Union Co.*, 8 *Queen's Bench*, 432, 444.

A corporation can take reasonable time in which to ascertain the genuineness of a signature, without becoming liable to the transfer of shares for the delay. *Chew vs. Bank of Baltimore*, 14 *Md.*, 319 ; *Bayard vs. Farmers' Bank*, 52 *Penn.*, 232.

Viewing the certificate as wholly *non-negotiable*, the mere fact of presenting it for transfer, did not place the holder of it in the position of guarantor of the genuineness of the signature of Denson to the extent of relieving the corporation from determining that fact for itself. *Lord Chancellor*, 1 *Macqueen*, 523 ; *Bernheimer vs. Marshall & Co.*, 2 *Minn.*, 78 ; *Ang. & Ames on Cor.*, sec. 582; *Bridgeport Bank vs. N. Y. & N. H. R. R. Co.*, 30 *Conn.*, 275 ; *Bank vs. Lanier*, 11 *Wall.*, 377.

In the case at bar, the name of Brown, Lancaster & & Co. nowhere appears on the certificates of Denson. They were assigned by him apparently in blank, to be good in the hands of the *bearer.* The Company waived the filling up the blanks in the assignment, and virtually treated the face of the certificate and assignments on the back of it, together as making a negotiable instrument. Their own construction and treatment of an instrument *prepared and sent into the commercial world by themselves*, ought to be conclusive in them. Brown, Lancaster & Co. took this instrument honestly, and their negligence is no answer. *Seybel's Case*, 13 *American Rep.*, 588.

The Company will not be allowed to escape its liability to *both parties for transferring on a forged power*, by assuming to be mere stakeholders, and entitled to interplead. *Dalton vs. Midland Railway Co.*, 74 *Eng. C. L. Rep.*, 458.

*Edward Otis Hinkley,* for the Howard Insurance Company.

Brown, Lancaster & Co. were *negligent.* They lent money on their *own judgment.* The company did not lead them into error. Their situation was not changed by the company's conduct. See *Weaver vs. Barden,* 49 *N. Y.,* 286; *Jones vs. Ryde,* 5 *Taunton,* 488; *Monk vs. Graham,* 8 *Modern Reports,* 9; *Hildyard vs. South Sea Company and Keate,* 2 *Peere Williams,* 76; *In re Bahia, &c.,* 3 *Q. B.,* (*L. R.,*) 584; *Hart vs. Frontino, &c. Gold Mining Co.,* 5 *Exch.,* (*L. R.,*) 111; *The Gloucester Bank vs. The Salem Bank,* 17 *Mass.,* 33; *The Bank of Commerce vs. The Union Bank,* 3 *Comstock,* 230; *Ellis & Morton vs. Ohio Life Ins. & Trust Co.,* 4 *Ohio State R.,* 628; *Canal Bank vs. Bank of Albany,* 1 *Hill,* 290.

Stewart, J., delivered the opinion of the Court.

Brown, Lancaster & Co. loaned to one McGruder, as agent of the firm of Denson & Quincy, one thousand dollars, to be returned in thirty days, and took McGruder's note therefor, and as collateral security for its payment, two hundred shares of the capital stock of the Howard Fire Insurance Company, belonging to Denson, whose name endorsed on the certificate thereof, was supposed by them to be genuine.

Soon thereafter, they sent the certificate to the Insurance Co., and requested the stock to be transferred to them, and accordingly the certificates were cancelled, and others in lieu thereof were issued to them.

In about a month afterwards Denson & Quincy failed, and notice was given to the Insurance Company and to Brown, Lancaster & Co. that Denson's name on the certificates was a forgery.

Brown, Lancaster & Co. sold the certificates, and requested the Company to issue new ones to the purchasers, which it declined.

Denson's assignee in bankruptcy filed the bill against the Insurance Company and Brown, Lancaster & Co., to compel the latter to deliver up the certificates issued to them, and that new ones should be issued by the Company to the complainant.

Brown, Lancaster & Co. filed a cross-bill against their co-defendants.

The Circuit Court decreed in favor of the complainant, and we think the decree must be affirmed.

It was conceded, and there can be no doubt of the right of Denson's assignee to have recovery of his certificates, or new certificates of his stock issued by the Insurance Company, in the place of those cancelled.

Denson's title to the stock could not be affected by the forgery practiced upon him, his right to the same was not divested by the fraud.

The only question about which there can be any dispute, is, whether the Insurance Company or Brown, Lancaster & Co. shall sustain the loss.

They are both innocent or unfortunate parties, and one or the other must lose; the latter having first advanced their money, without knowledge of the frauds; and the former having cancelled the old certificates of stock and issued a new one to Brown, Lancaster & Co., supposing Denson's signature to be genuine. Brown, Lancaster & Co., for the fraud perpetrated upon them, still have their remedy against Quincy, or McGruder, who gave his note and received their check. The Insurance Company have their remedy against Brown, Lancaster & Co., who have upon the forged name, and without consideration, received the certificate belonging to Denson, to whom, or his assignee, they are responsible.

Brown, Lancaster & Co. have no right to withhold the certificates they obtained from the Insurance Company, unless they could prove that they had, in some way, lost through its negligence. If, by the issue of certificates in

their name, Brown, Lancaster & Co. lost the opportunity of making the money out of Quincy, there might be some question, but the evidence does not establish such fact. If the Insurance Company had been guilty of negligence, unless that was the occasion of the loss to Brown, Lancaster & Co., it would not be sufficient to shift the loss upon it. Negligence to operate as an estoppel must be the proximate cause of the loss. *Swan vs. North British Australasian Co.*, 7 *Hurlston & Norman*, 603. The stock certificates were not negotiable paper, and Brown, Lancaster & Co. and the Insurance Company received notice of the forgery about the same time, and the issue of the certificates by the Company, through mistake, and the delay in the discovery of the fraud, cannot deprive the Insurance Company of the right to recover the certificates.

Brown, Lancaster & Co. first advanced their money at their own hazard.

The Insurance Company having issued the stock upon the forged name, to Brown, Lancaster & Co., who had before treated it as a genuine paper, and to that extent misled the Insurance Company, Brown, Lancaster & Co. ought not to hold them accountable for the loss incurred by their own error, unless they could make it appear that they might have avoided the loss, but for the negligence or oversight of the Insurance Company.

Any negligence on its part would not render it answerable, unless that were the proximate cause of the loss.

If their equity were equal, it would not follow that the Insurance Company having issued the certificates to Brown, Lancaster & Co., they ought to be permitted to hold them. If they were equally free from fault, the fact that the certificates were obtained without equivalent, through mistake, would require their restitution. *Canal Bank vs. Bank of Albany*, 1 *Hill*, 287.

The Insurance Co. is only bound by the same moral and legal obligations as Brown, Lancaster & Co., or other indi-

viduals. If a subsequent *bona fide* purchaser had been registered as the owner of the stock, purchased from Brown, Lancaster & Co., and was claiming a right thereto, that would present a different question,. as between him and the Company, but that could not relieve them from the claim of the Insurance Company.

After they were aware of the fraud, to have passed them to an innocent party, would not have protected them against the claim of the Company.

The established principles of equity require that the loss shall be borne by the party by whose negligence or misconduct it was occasioned. *Lowry vs. Com. and Farm. Bank of Balt., Taney's Cir. Court Rep.*, 310.

There has been no loss by the negligent conduct of the Insurance Company. Brown, Lancaster & Co. had already incurred the loss through their inadvertence or negligence, in permitting themselves to be imposed upon by the forgery, and they have no right to throw it upon the Insurance Company, who have, through mistake, followed their lead.

*Decree affirmed.*

(Decided 3rd June, 1875.)